UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------X

ANDRE J. LAURANT,

       *Plaintiff*,

          -against-

THE CITY OF NEW YORK; JOHN DOES 1-
10, Members, Candidate
Investigation Division, Fire Dept.
City of New York; and JOHN DOES 11-
20, Members, Personnel Review
Board, Fire Dept. City of New York,
each sued individually and in their
official capacities as employees of
defendant CITY OF NEW YORK,

       *Defendants*.

---------------------------------X

**MEMORANDUM & ORDER**

17-CV-5740(KAM)(JO)

**MATSUMOTO, United States District Judge:**

      Plaintiff Andre Laurant ("Laurant" or "plaintiff"),

initiated the instant action on September 29, 2017, by filing a

complaint against defendants City of New York and 20 John Doe

defendants involved in the Fire Department for the City of New

York's ("FDNY") firefighter hiring process. (*See* ECF No. 1,

Complaint ("Compl.") at 2.) In his complaint, Laurant alleged

discrimination under Title VII of the Civil Rights Act of 1964,

42 U.S.C. § 2000, *et seq.*; 42 U.S.C. § 1983; New York State's

Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL"); and New York

City's Human Rights Law, N.Y.C. Admin. Code § 8-107 ("NYCHRL").

(*Id.* at 1.) In an Amended Complaint filed on February 8, 2018,

plaintiff dropped his Title VII claims.  (*See* ECF No. 14, Amended Complaint ("Am. Compl.").)

Defendant City of New Yok now moves this court to dismiss plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  (*See* ECF No. 19, Def. Mem.)  For the reasons described below, the court grants defendant's motion in its entirety because plaintiff's claims are time-barred and, in the alternative, plaintiff fails to state a claim of discrimination.

## BACKGROUND

The following facts are taken from the Amended Complaint, and are assumed to be true for the purposes of this motion.[1]  Andre Laurant of Staten Island, New York, applied to be a firefighter with the FDNY though it is unclear when or if he sat for an examination.[2]  (Am. Compl. at 5.)  He identifies as an African-American male.  (*Id*. at 2.)  Laurant is a class member in a discrimination suit brought in this District against defendant City of New York, captioned *United States v. City of New York*, No. 07-CV-2067.  (*Id*. at 5.)  Sometime in February 2013, Laurant completed a form called a Comprehensive Personnel

---

[1]    When considering a motion to dismiss a complaint for failure to state a claim, the court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the plaintiff.  *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001).

[2]    Plaintiff's submissions indicate he applied as part of "Examination No.: 2000" and "List No.: 0262."  (Am. Compl. at 5.)

Document ("CPD") as part of the application process to become a firefighter and submitted it to defendant members of the FDNY's Candidate Investigation Division ("CID"), John Does 1-10 (the "CID Defendants"). (*Id.*) The CPD contained questions concerning his employment history and his arrest and criminal history. (*Id.*) After reviewing his CPD, the CID defendants notified Laurant of their position that he had "ma[de] false statements and intentionally fail[ed] to disclose information" on his CPD. (*Id.* at 6.) Sometime in November 2013, Laurant wrote to the CID—whether of his own accord or in response to an inquiry or notice is unclear. (*Id.* at 7.) In this correspondence, he described two separate incidents for which he was arrested: first for Criminal Mischief in April 1995; and then for Criminal Possession of Stolen Property in the Fifth Degree in August 1995. (*Id.* at 6-7.) Laurant strongly suggested to the CID defendants that the arrests were falsely made and that his "race may have been a factor." (*Id.* at 7.) To explain these apparent omissions from his CPD, Laurant stated that "he simply forgot about them." (*Id.*)

Laurant's letter to the CID defendants also included information clarifying his employment history, which, he alleges, the CID defendants also falsely accused him of misrepresenting. (*Id.* at 8.) Specifically, he alleges that the CID defendants falsely accused Laurant of mischaracterizing his

employment with Staten Island University Hospital ("SIUH") and failing to disclose employment at Robert Wood Johnson Hospital ("RWJH"). (*Id.*) According to plaintiff, his CPD noted employment at SIUH from September 2006 through March 2011 as a "Lead Anesthesia Technician." (*Id.*) Staff at SIUH, however, later confirmed to the CID defendants through unspecified correspondence that Laurant was instead employed as a "monitoring assistant." (*Id.*) In the same November 2013 letter explaining this discrepancy, Laurant stated that this apparent difference in title was a technique SIUH management used to avoid paying a higher salary to plaintiff. (*Id.*) His letter also "strongly suggest[ed]" that he encountered racial discrimination at SIUH and subsequently decided to resign. (*Id.* at 9.) In the same letter, Laurant also explained that he was "briefly employed" at RWJH but similarly endured racial discrimination while employed there and once again decided to resign. (*Id.*)

Sometime later in November 2013, defendant City of New York and the CID defendants referred Laurant's case to defendant members of the Personnel Review Board ("PRB"), John Does 11-20, (collectively the "PRB defendants") for review. (*Id.*) On November 26, 2013, defendant City of New York and the PRB defendants disqualified Laurant based on his arrest record and his omission of material facts from his CPD. (*Id.*)

After this initial disqualification, in January 2014
defendants determined Laurant was "Not Qualified" due to his
arrest history, though it is unclear how Laurant received notice
of this decision or of the November 26, 2013 disqualification.
(*Id.*)  On January 21, 2014, Laurant filed a Notice of Appeal
with defendant City of New York through the Civil Service
Commission ("CSC").  (*Id.*)  On September 15, 2014, defendants
amended their determination that plaintiff was "Not Qualified"
due to his arrest history, apparently adding "omission of arrest
history, omission of employment history, and falsification of
employment history," to their bases.  (*Id.* at 11.)

In March 2015, the Civil Service Commission reaffirmed
defendants' determination of Laurant's application, without
considering whether defendants' actions were consistent with the
United States Equal Employment Opportunity Commission's ("EEOC")
Uniform Guidelines on Employee Selection Procedures ("UGESP").
(*Id.*)  In June 2015, plaintiff then commenced an Article 78
appeal in New York State Supreme Court in the County of the
Bronx seeking to "annul" the determinations of the PRB and CID
defendants and the City of New York's Civil Service Commission.
(*Id.* at 12.)  In October 2015, Laurant and the City then agreed
to transfer the proceeding to the Supreme Court in the County of
New York.  (*Id.*)  At some point, defendant City of New York
"agreed to 're-evaluate'" Laurant's qualification for the

position of firefighter and the parties thus agreed to
discontinue the Article 78 proceeding. (*Id.*) Then, once again,
on September 21, 2016, defendants re-evaluated Laurant's
application and "simply reaffirmed their original
determination." (*Id.*)

Defendant City of New York, the CID defendants, and
the PRB defendants allegedly failed to perform an independent,
objective analysis of the circumstances surrounding plaintiff's
arrests, the omissions from his application, the veracity of
plaintiff's statements concerning his omissions, and the impact
of the omissions on his suitability for employment as a
firefighter. (*See, e.g.*, *id.* ¶¶ 45, 50, 57, 58, 63.) According
to plaintiff, the City of New York does not administer its
hiring process in a standard manner; does not monitor its hiring
process to guard against disparate racial impact or treatment;
and does not monitor its workforce attrition, turnover, or
productivity statistics to determine if its hiring process
results in disparate racial treatment or impact. (*Id.* at 4.)
And, according to plaintiff, these shortfalls indicate that
defendant City of New York is not in compliance with the UGESP.
(*Id.*)

In December 2017, an individual by the name of Joseph
Cassano, a former Emergency Medical Technician ("EMT") and the
son of former FDNY Commissioner Salvatore Cassano, received an

appointment to the position of firefighter in the FDNY.  (*Id.*)

Cassano received this appointment, according to plaintiff,

despite a history of espousing racist and anti-Semitic views on

social media.  (*Id.*)  Cassano's hiring received attention by

Mayor Bill DiBlasio who commented, "nobody's perfect."  (*Id.* at

13.)

Plaintiff filed a Charge of Discrimination with the

EEOC on or about June 30, 2015, covering acts occurring between

February 6, 2013 and March 4, 2015.[3]  (*See* ECF No. 24, Pl. Opp.

at 13.)  Approximately two years later, on or about July 1,

2017, plaintiff received a Notice of Right to Sue from the EEOC

and subsequently filed a complaint initiating this action.

(*Id.*)

**LEGAL STANDARD**

### I.   Sufficiency of the Pleadings

Defendant City of New York moves pursuant to Rule

12(b)(6) to dismiss plaintiff's complaint for failure to state a

claim.  In considering a motion to dismiss, the court construes

the complaint liberally, "accepting all factual allegations in

the complaint as true, and drawing all reasonable inferences in

---

[3]    The facts regarding plaintiff's alleged proceeding before the EEOC are
taken from plaintiff's opposition to the instant motion to dismiss.  (*See* ECF
No. 24, Pl. Opp.)  The court notes that neither plaintiff's complaint nor
Amended Complaint include facts concerning his petition before the EEOC, and
plaintiff offers no exhibits to support his assertions.  Moreover, the date
he cites for beginning his proceeding is the same date he cites for bringing
an Article 78 proceeding in state court. (*See* Pl. Opp. at 9; Am. Compl. ¶
74.)

the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citing *Gregory*, 243 F.3d at 691). A plaintiff must plead facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A complaint is facially plausible when the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not contain detailed factual allegations, but must contain more than mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" or "naked assertions" devoid of "further factual enhancement." *Id.*

## DISCUSSION

### I.   Statute of Limitations

Defendant City of New York asserts that plaintiff's claims based on discrete acts occurring prior to October 2, 2014 are time-barred based on the statutes of limitations applicable to each of his claims.[4]  (Def. Mot. at 11.)  Plaintiff responds

---

[4]    Defendant refers to October 2, 2017 as the date when plaintiff commenced this action.  (*See* Def. Mot. at 11.)  However, a review of the docket in this case indicates plaintiff filed his complaint on September 29, 2017 but that the case was assigned to the court, and summons issued as to defendant City of New York, on October 2, 2017.  (*See* ECF No. 5 and Docket Notation dated October 2, 2017.)  Thus the filing date for purposes of the statute of limitations analysis is September 29, 2017.

by stating he filed a complaint with the EEOC on June 30, 2015, and that he received a notice of Right to Sue from the EEOC on July 1, 2017. (Pl. Opp. at 17.) He argues that the discriminatory acts by defendants that support his NYCHRL claims continued until June 24, 2016, which date does not appear to correspond to any of the events plaintiff alleges in his Amended Complaint. (*Id.*) Plaintiff also argues that some other discriminatory acts continued until April 26, 2017, which apparently corresponds with plaintiff's agreement with the City of New York to discontinue an Article 78 proceeding in State Supreme Court. (*Id.*; Am. Compl. ¶ 78.) Finally, plaintiff argues that a four-year statute of limitations applies to his § 1983 claims, citing *Ortiz v. City of New York*, 755 F. Supp. 2d. 399, 407 (E.D.N.Y. 2010). To this last point defendant responds that *Ortiz* only held that the four-year limitations period applied to § 1983 actions made possible by amendments made after December 1, 1990. (Def. Reply at 3.) Defendant City of New York argues that because failure to hire claims were actionable under § 1983 prior to such amendments, they are subject to the typical three-year limitations period. (*Id.*) As set forth below, the court applies a three-year statute of limitations.

Although "[t]he lapse of a limitations period is an affirmative defense that a defendant must plead and prove," a

statute of limitations defense may be "raise[d] . . . in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).

Courts look to state law to determine the applicable limitations period for § 1983 actions. *See Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002). For § 1983 actions arising in New York, courts apply a three-year statute of limitations. *Id*. However, federal law determines when a § 1983 claim accrues. *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980). The Second Circuit has ruled that accrual occurs "'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Id*. Accrual does not wait "until the [plaintiff] has received judicial verification that the defendants' acts were wrongful." *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994); *Washington v. Cty. of Rockland*, 373 F.3d 310, 319 (2d Cir. 2004) (noting that three-year statute of limitations begins to run when the plaintiffs "knew or should have known of the discriminatory action"). Discriminatory terminations or refusals to hire are "discrete acts" that constitute "a separate actionable 'unlawful

employment practice'" under Title VII or § 1983. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).[5]

Both the NYSHRL and NYCHRL have a three-year statute of limitations. *Bonner v. Guccione*, 178 F.3d 581, 584 (2d Cir. 1999) (noting that NYSHRL has a three-year statute of limitations); *Hongyan Lu v. Chase Inv. Servs. Corp.*, 412 F. App'x 413, 418-19 (2d Cir. 2011) (noting that NYSHRL and NYCHRL claims have three-year limitations periods). However, courts in this Circuit have held that the filing of a complaint with the EEOC will toll the limitations period on related claims under NYSHRL and NYCHRL. *Ugactz v. United Parcel Serv., Inc.*, No. 10-CV-1247, 2013 WL 1232355, at *6 (E.D.N.Y. Mar. 26, 2013); *but see Collier v. Boymelgreen Developers*, No. 06-CV-5425, 2008 WL 835706, at *9 (E.D.N.Y. Mar. 28, 2008) ("[A]lthough district courts within the Second Circuit are split on the issue, the weight of precedent, particularly within the Eastern District of New York, suggests that the statute of limitations on such a state law claim is not tolled during the pendency of an EEOC claim."). The Second Circuit, however, has not directly addressed this question. *Humphreys v. N.Y.C. Health and Hosp. Corp.*, No. 16-CV-9707, 2018 WL 3849836, at *3 (S.D.N.Y. Aug. 10,

---

[5]     The Second Circuit has also applied *National Railroad*'s discrete acts standard to § 1983 claims. *See, e.g.*, *Washington*, 373 F.3d at 318; *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 79 (2d Cir. 2015) ("The considerations set forth by the Supreme Court in *National Railroad* apply to § 1983 employment claims as well.").

2018).  As an equitable matter, tolling the limitations period

on related state law claims is appropriate for Title VII cases

when a plaintiff must first exhaust certain remedies through the

EEOC before bringing those anchor claims in federal court.  *See*

*Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006);

*see also Ritterband v. Hempstead Union Free Sch. Dist.*, No. 06-

CV-6628, 2008 WL 3887605, at *8 n.9 (E.D.N.Y Aug. 20, 2008)

(tolling limitations period for NYSHRL and NYCHRL claims during

pendency of EEOC claim, noting similar treatment under state law

and constructive cross-filing between state and federal agencies

in New York).  Those same concerns are not raised here where

plaintiff does not bring a claim under Title VII and moreover

has not argued for such tolling.  In any event, plaintiff must

first establish a valid anchor claim before invoking this

court's supplemental jurisdiction.  If he fails to do so, the

court may decline to extend jurisdiction as to plaintiff's

NYSHRL and NYCHRL claims.

Because an alleged discriminatory refusal to hire is a

discrete act, the court shall apply a three-year statute of

limitations to all of plaintiff's claims.  Defendant City of New

York is correct that *Ortiz* held that the four-year statue of

limitation applies to those actions brought under § 1983

claiming violation of a right protected by a post-1990

enactment, and that plaintiff's claim was available before 1990. *Ortiz*, 755 F. Supp. 2d at 407-09.

Despite this three-year limitations period, a plaintiff may delay accrual of his claim, and the running of the limitations period, through the continuing violations doctrine if he shows that he was subjected to an "ongoing policy" of discrimination. *Smith v. N.Y.C. Dep't of Educ.*, 524 F. App'x 730, 732 (2d Cir. 2013); *see also Corona Realty Holding, LLC v. Town of N. Hempstead*, 382 F. App'x 70, 72 (2d Cir. 2010) (describing continuing violation doctrine as an "exception to the normal knew-or-should-have-known accrual date"); *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001) ("[I]f a plaintiff has experienced a 'continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" (quoting *Gomes v. Avco Corp.*, 964 F.2d 1330, 1333 (2d Cir. 1992))). "Generally, [the] continuing violations doctrine is associated with a discriminatory policy, as opposed to individual acts of discrimination . . . ." *Rodriguez v. Cty. of Nassau*, 933 F. Supp. 2d 458, 462 (E.D.N.Y. 2013). However, courts may find that the doctrine applies when "specific and related instances of discrimination are permitted by the employer to continue unremediated for so long as to amount to a discriminatory policy or practice." *Id.*

In *Rodriguez v. Cty. Of Nassau*, 547 F. App'x 79 (2d Cir. 2013), the Second Circuit upheld the district court's decision not to apply the continuing violations doctrine to a would-be corrections officer's § 1983 claims. *Rodriguez*, 547 F. App'x at 80-81, *aff'g* 933 F. Supp. 2d 458 (E.D.N.Y. 2013). The plaintiff in *Rodriguez* applied to the county corrections department but was disqualified for failure to cooperate with a background investigation having missed several opportunities for an interview. *Rodriguez*, 933 F. Supp. 2d at 460-61. The plaintiff sought review under Article 78 in state court, was ultimately unsuccessful, and then filed discrimination charges with the New York Division of Human Rights and with the EEOC. *Id*. at 461. The district court in *Rodriguez* found that the plaintiff's claims brought under § 1983 accrued on the day he received the disqualification letter and that his efforts seeking reconsideration did not amount to a continuing violation or evince a policy of discrimination. *Id.* at 462. The Second Circuit affirmed, reiterating that efforts to challenge an alleged discriminatory hiring decision did not turn a discrete event into an ongoing practice of discrimination tolling the limitations period. *Rodriguez*, 547 F. App'x at 81.

Plaintiff does not expressly argue for this court to apply a continuing violations doctrine to find that all his claims are timely. However, the court would have to apply the

doctrine to reach all of the discriminatory acts plaintiff alleges. Plaintiff filed this action on September 29, 2017. Applying a three-year limitations period, acts that occurred before September 29, 2014 are time-barred. This includes plaintiff's initial denial, of which he received notice on November 26, 2013, (Am. Compl. ¶ 62), defendants' January 17, 2014 determination that plaintiff was "Not Qualified," (*id.* ¶ 64), and defendants' September 15, 2014 amended filing once again concluding plaintiff was not qualified, (*id.* ¶ 68).

Applying *Rodriguez*, the court finds that the continuing violations doctrine is not applicable to plaintiff's claims and that his claims accruing before September 29, 2014 are thus time-barred. Laurant's efforts to seek review with defendants of his denial did not turn a discrete act into an ongoing discriminatory policy, thus the continuing violations doctrine is not applicable. Here, on January 21, 2014, Laurant filed a complaint with the CSC and then an Article 78 appeal in state supreme court sometime in June 2015, directly challenging defendants' hiring decision. While these proceedings were pending, plaintiff also corresponded with defendants who agreed to revisit his application. None of these subsequent reviews sought by plaintiff delayed accrual or otherwise tolled the

limitations period under § 1983.[6] *See Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 2007) ("[A] plaintiff's pursuit of a state remedy, such as an Article 78 proceeding, does not toll the statute of limitations for filing a claim pursuant to section 1983."); *cf. Del. State Coll. v. Ricks*, 449 U.S. 250, 261 (1980) ("[T]he pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods.").

Though plaintiff's Amended Complaint is far from clear, he does not expressly allege that the affirmances by defendant City of New York, through the CSC, and later by the PRB and CID defendants constituted discrete discriminatory acts, actionable standing alone, or as part of an ongoing policy. Nevertheless, the court finds that plaintiff's efforts to challenge a civic agency's hiring decision did not "turn a discrete event into a continuing practice of discrimination." *Rodriguez*, 547 F. App'x at 80 (citing *Del. State Coll.*, 449 U.S. at 261).

---

[6]   Plaintiff has not argued that the court should find equitable tolling applies to his claim, and the court sees no reason that it should, given the absence of exceptional circumstances in this case. *See Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) ("[E]quitable tolling is only appropriate in rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights." (internal quotation marks, citations, and brackets omitted)); *see also Rodriguez*, 547 F. App'x at 81 (finding that promptly pursuing a state court review of the hiring decision did not warrant equitable tolling of the limitations period).

Because these claims are time-barred, the court grants defendant's motion to dismiss as to those claims accruing prior to September 29, 2014.  Therefore, such claims are dismissed with prejudice.  *See Johnson v. Long Island Univ.*, 58 F. Supp. 3d 211, 219 (E.D.N.Y. 2014).  Had plaintiff argued for the court to toll the limitations period on his NYSHRL and NYCHRL claims during the pendency of his EEOC proceeding, the court would alternatively decline to exercise jurisdiction over these state law claims after dismissing his § 1983 claims.  *See Rodriguez*, 933 F. Supp. 2d at 463 (citing 28 U.S.C. § 1367(c) in declining to exercise supplemental jurisdiction after dismissing § 1983 anchor claims).

Even if plaintiff's claims were not time-barred, as discussed below, the court finds that the Amended Complaint fails to state a claim upon which the court may grant relief and it is dismissed in its entirety.

## II.    Failure to State a Claim

The alleged acts that remain for the court's consideration are thus: (1) the CSC's March 4, 2015 affirmance of plaintiff's Character Disqualification, (Am. Compl ¶ 70); (2) the City of New York's October 6, 2015 agreement with plaintiff to transfer his Article 78 appeal to the County of New York, (*id.* ¶ 75); (3) defendant City of New York and the John Doe defendants' September 21, 2016 re-evaluation of plaintiff's

qualifications and "re-affirm[ance of] of their original determination," (*id.* ¶ 77); and (4) defendant City of New York's April 26, 2017 agreement with plaintiff to discontinue the Article 78 proceeding, (*id.* ¶ 78).

First, the agreements between plaintiff and defendants to transfer and then discontinue the Article 78 proceeding do not constitute discriminatory acts. Thus, only the alleged March 4, 2015 CSC affirmation, and the September 21, 2016 re-evaluation and affirmation, by defendants occurred during the limitations period. And, although the acts alleged before September 29, 2014 are time-barred, the court may consider them in evaluating the sufficiency of Laurant's pleadings. *DeNigris v. N.Y.C. Health and Hosp. Corp.*, 861 F. Supp. 2d 185, 192 (S.D.N.Y. 2012) ("[T]ime-barred acts may be considered for context."); *see also Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 208 (E.D.N.Y. 2014) (considering time-barred acts "as background information providing context for Plaintiff's claims").

### A. Section 1983 and NYSHRL Claims

Plaintiff brings his discrimination claims under § 1983, NYSHRL, and NYCHRL. (*See* Am. Compl. at 1.) To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and that the deprivation was committed by a person acting under

color of law. *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004). The Equal Protection Clause of the 14th Amendment prohibits disparate treatment on the basis of race by a public employer. *Littlejohn v. City of New York*, 795 F.3d 297, 320 (2d Cir. 2015). Such claims brought under § 1983 mirror Title VII claims once the plaintiff establishes the "color of law" requirement, and it is undisputed that "a state employee acting in his official capacity is acting 'under color of state law.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 82 (2d Cir. 2015) (citing *Feingold*, 366 F.3d at 159). Section 1983 claims may be brought against individuals where Title VII does not permit such a suit. *Id.* at 88.

The Second Circuit considers Title VII and § 1983 employment discrimination claims under the burden-shifting evidentiary framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Littlejohn*, 795 F.3d at 312. And courts apply the same standard to discrimination claims brought under NYSHRL. *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 317 n.2 (2d Cir. 1999) ("Employment discrimination claims brought under the NYSHRL are analyzed identically to claims under Title VII.").

Plaintiff's NYCHRL claim, however, "[is] to be evaluated separately from federal and state law claims and given liberal, independent construction." *Gorokhovsky v. N.Y.C. Hous.*

*Auth.*, 552 F. App'x 100, 101 (2d Cir. 2014) (citing *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013)). NYCHRL claims are to be given an independent liberal construction from federal and state analogous remedies. Though courts have interpreted this as a lower standard for pleading purposes, *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009), plaintiffs must still show some evidence from which discrimination can be inferred, *Ben-Levy v. Bloomberg, L.P.*, 518 F. App'x 17, 19-20 (2d Cir. 2013). "[T]he NYCHRL is not a general civility code" though, and a plaintiff must plead that the defendant's alleged conduct is caused "at least in part" by discriminatory motivation. *Mihalik*, 715 F.3d at 113.

At the pleadings stage, the Second Circuit has applied the *McDonnell Douglas* burden shifting test to require a plaintiff establish that "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Vega*, 801 F.3d at 83. Though this analysis has been viewed as a reduced standard at the pleadings stage, "nevertheless, 'a discrimination complaint . . . must [still] at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed.'" *Dooley v. JetBlue*

*Airways Corp.*, 636 F. App'x 16, 20 (2d Cir. 2015) (alteration in original) (quoting *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014)).

To survive a motion to dismiss then, a discrimination complaint must allege facts that give plausible support that "the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by a discriminatory intent." *Littlejohn*, 795 F.3d at 311. The Second Circuit has held that a plaintiff can meet the pleading burden through direct evidence of intent to discriminate, or by showing circumstances that give rise to an inference of discrimination. *Id.* at 310-11; *Vega*, 801 F.3d at 87. A plaintiff may raise an inference of discrimination either "by meeting the requirements of *McDonnell Douglas* and showing that the employer's stated reason for its employment action was pretext to cover-up discrimination, or by otherwise creating a 'mosaic' of intentional discrimination by identifying 'bits and pieces of evidence' that together give rise to an inference of discrimination." *Vega*, 801 F.3d at 87 (citations omitted); *Littlejohn*, 795 F.3d at 311 (requiring plaintiff satisfy "*minimal* burden of showing facts suggesting an inference of discriminatory motivation" (emphasis in original)). Additionally, to hold an individual liable under § 1983, a

complaint must plead personal involvement.  *Rasparado v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014).

Plaintiff alleges disparate treatment to raise an inference of discrimination.  (*See* Am. Compl. at 12-14.)  The more favorable treatment of similarly situated employees or candidates not in a plaintiff's protected group can give rise to an inference of discrimination.  *Littlejohn*, 795 F.3d at 312.  A plaintiff must plausibly allege the existence of at least one comparator who was more favorably treated despite being "similarly situated to the plaintiff 'in all material respects.'"  *Ruiz v. Cty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010) (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)).  A comparator is similarly situated if they are "(1) 'subject to the same performance evaluation and discipline standards' and (2) 'engaged in comparable conduct.'"  *Id*. at 493-94 (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000)).  "[C]omparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases," and not "a showing that both cases are identical."  *Graham*, 230 F.3d at 40.  "At the motion to dismiss stage . . . a court still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are

similarly situated." *Mosdos Chofetz Chaim*, *Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 698 (S.D.N.Y. 2011).

Plaintiff also appears to argue in opposing the instant motion that he was the victim of discrimination based on a theory of disparate impact. Disparate impact plaintiffs must plead facts that plausibly indicate defendants' facially neutral policy had a disproportionate effect on the plaintiff's protected group. *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 986-88 (1988). A disproportionate effect can be shown through a gross statistical disparity in outcomes, or a statistically significant adverse effect coupled with other evidence of discrimination. *Duncan v. N.Y.C. Transit Auth.*, 127 F. Supp. 2d 354, 360 (E.D.N.Y. 2001), *aff'd*, 45 F. App'x 14 (2d Cir. 2002).

Though the pleading standard requires a plaintiff demonstrate qualification, this does not appear to be a major focus of the parties' briefing on this motion. The court notes, of course, that defendants found plaintiff not qualified for the stated reasons. In any event, the court will focus its inquiry, as many discrimination cases do, on whether plaintiff sufficiently raised the minimal inference of defendants' discriminatory intent.

### B. *Monell* Claim

To successfully plead a § 1983 claim against a
municipality for constitutional violations by its employees, a
plaintiff is required to show "'three elements: (1) an official
policy or custom that (2) causes the plaintiff to be subjected
to (3) a denial of a constitutional right.'" *Wray v. City of
New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quoting *Batista v.
Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)); *see also
Littlejohn*, 795 F.3d at 314; *Monell v. Dep't of Soc. Servs.*, 436
U.S. 658, 692-94 (1978).  An express rule is not required, but a
plaintiff can show that "a discriminatory practice was so
persistent or widespread as to constitute a custom or usage with
the force of law, or that a discriminatory practice of
subordinate employees was so manifest as to imply the
constructive acquiescence of senior policy-making officials."
*Littlejohn*, 795 F.3d at 315.  Unlawful hiring decisions by
individuals "whose edicts or acts may fairly be said to
represent official policy" can support a *Monell* claim.  *Id*.
*Monell*, however, does not provide a separate cause of action
against municipalities; it merely *extends* liability to municipal
organizations whose policies or sanctioned customs lead to an
independent constitutional violation.  *Segal v. City of New
York*, 459 F.3d 207, 219 (2d Cir. 2006).  Therefore, the lack of

an underlying constitutional violation will defeat a *Monell* claim. *Id.*

## C. **Application**

### i. *Claims Against John Doe Defendants*

Defendant City of New York argues that plaintiff's allegations are wholly conclusory and that his one comparator for disparate treatment purposes is not similarly situated. (Def. Mem. at 8-9.) Plaintiff responds that he alleged sufficient facts and that defendant argues for a heightened pleading standard.[7] (Pl. Opp. at 13-15.) He also argues that his claims under NYSHRL and NYCHRL may proceed under a disparate impact theory. (*Id.* at 15.)

Although the pleading burden in an employment discrimination case is "minimal," *Zimmerman v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001), dismissal is nevertheless appropriate where the plaintiff fails to allege even the basic elements of a discriminatory action claim, *Patane v. Clark*, 508 F.3d 106, 112 n.2 (2d Cir. 2007). The Amended Complaint expressly alleges that defendant City of New York and

---

[7]     Plaintiff devotes a portion of his opposition to a discussion of discriminatory employment tests, citing *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971). (Pl. Opp. at 14.) The court does not consider this new theory of discrimination as it is brought for the first time in response to defendant's motion to dismiss. *See Peacock v. Suffolk Bus Corp.*, 100 F. Supp. 3d 225, 231 (E.D.N.Y. 2015); *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998).

the CID defendants "intentionally used race as an impermissible factor in its determinations." (Am. Compl. ¶ 59.) Although this bald allegation, even if accepted as true, arguably constitutes discriminatory bias, it is nothing more than a conclusory allegation, and plaintiff provides no further factual support to infer direct discriminatory motive by defendants. The same is true of plaintiff's bare assertion that defendants' stated reason for refusing to hire him was a pretext. The pleadings are devoid of support. Plaintiff fails to plead sufficient facts to support either his discriminatory motive or pretext allegations and does not provide direct factual support for his discriminatory intent claims.

Thus, the court must determine if plaintiff's pleading adduces sufficient facts to give plausible support to a minimal inference of discriminatory motivation. *Littlejohn*, 795 F.3d at 311. Plaintiff argues both disparate treatment and disparate impact theories to support his claim of discriminatory intent. However, the court finds that the remainder of plaintiff's Amended Complaint includes, at best, only formulaic recitations of the legal elements of a discrimination claim without sufficient factual support and fails to give rise to even a minimal inference that the PRB and CID defendants used race as an impermissible factor in deciding Laurant was not qualified,

or carried out policies that had a disproportionate impact on
African American candidates.

First, plaintiff does not allege that disqualifying
candidates based on the failure to disclose arrests, or on the
types of arrests on his record, is somehow a proxy for
disqualifying African American candidates.  Indeed, as defendant
City of New York points out, there is no allegation that
defendants were even aware of plaintiff's race.  Given the
posture of this motion, the court need not accept as true
defendant City of New York's contention that the PRB and CID use
"blind" or anonymous applications.  (Def. Mem. at 10); *but see
Lopez v. City of New York*, No. 14-CV-3285, 2016 U.S. Dist. LEXIS
72145, at *20-21 n.7 (E.D.N.Y May 31, 2016) (citing PRB
guidelines' statement that reviewed files are anonymous).
Nevertheless, plaintiff offers no facts to support the
conclusion that disqualifying candidates based on the failure to
disclose these types of arrests, or arrests in general, somehow
discriminates by race.  He has not alleged any evidentiary facts
to demonstrate disparate effect on African Americans through
statistics, or anything more than his bare assertions.  Thus,
his disparate impact theory fails.

Plaintiff next fashions his claim as one for disparate
treatment, pointing to Cassano as a similarly situated candidate
who received a position as a firefighter despite his alleged

similar "mistakes."  (*See* Am. Compl. at 13.)  The court finds
that plaintiff has not alleged that Cassano is similarly
situated to plaintiff in all material respects, as required for
a disparate treatment claim to raise a minimal inference of
discriminatory motivation.  Plaintiff points to Cassano's
publicized history of racist and anti-Semitic social media posts
and his subsequent resignation as an EMT.  However, plaintiff
makes no allegations as to Cassano's arrest history, or whether
Cassano's application to become a firefighter included omissions
concerning such arrest history or contained inaccuracies
regarding his employment history.  On this basis alone the court
finds that plaintiff and Cassano are not similarly situated.

There are additional reasons why the court finds
Cassano and plaintiff not similarly situated in all material
respects.  Missing from plaintiff's Amended Complaint are other
bases upon which the PRB and CID defendants evaluate potential
candidates including test scores, education, physical ability,
or relevant experience.  First, it is unclear when defendants
considered Cassano's application and for which examination he,
or plaintiff, sat.  This bears on whether the two were subject
to the same hiring standards.  As to the last criterion of
relevant experience, Cassano served as an EMT before receiving
an appointment to be a firefighter.  Although plaintiff alleges
he has experience working in healthcare, he has not argued why

that experience makes him similarly situated to Cassano.
Finally, it is unclear how familial ties influenced
consideration of Cassano's application, but this connection may
have been favorable to Cassano, and at the very least
distinguishes him from plaintiff.  Thus, plaintiff has failed to
allege the existence of a single similarly situated comparator
to illustrate his disparate treatment claim and ultimately to
support even a minimal inference of discriminatory intent by
defendants.

Thus, plaintiff's disparate treatment claims under
both § 1983 and NYSHRL fail and are dismissed as to all the John
Doe defendants.  And, despite the lesser standard, plaintiff's
claims under NYCHRL fail for the same reasons.  Because
plaintiff has failed to raise even a minimal inference of
discriminatory intent to state a claim under § 1983 and NYSHRL,
he cannot satisfy his burden under NYCHRL that defendants'
conduct was "caused at least in part by discriminatory"
motivation.  Thus, his NYCHRL claims against the individual
defendants are dismissed as well.

ii.    *Claims Against City of New York*

The court next turns to plaintiff's *Monell* claims
against defendant City of New York.  Defendant City of New York
argues that plaintiff has pleaded only conclusory allegations

29

that the City of New York's hiring practice is discriminatory. (Def. Mot. at 11-12.) Plaintiff responds that he has sufficiently pleaded that defendants exhibited "deliberate indifference by failing to ensure" an objective review process, reciting the elements of a failure to train claim without citing legal authority.[8] (Pl. Opp. at 17.) He concludes that, based upon the totality of the circumstances, the court should find that he has stated a *Monell* claim. (*Id.*)

Plaintiff alleges that the City of New York's firefighter hiring process is fraught with subjectivity and implicit bias, and that the City does not administer this selection process in a standardized manner; does not monitor for disparate racial impact or treatment; and does not evaluate its workforce retention, attrition, and productivity to determine if its hiring process has disparate racial impact. The Amended Complaint also alleges that the City of New York is not in compliance with EEOC standards known as the UGESP, however, the court notes that this allegation may be a remnant from plaintiff's original complaint bringing Title VII claims. Finally, plaintiff alleges that the City of New York did not independently or objectively evaluate the circumstances surrounding his arrests, and the other omissions from his

---

[8]    Defendant correctly notes in its reply that the authority for a deliberate indifference claim can be found in *Walker v. New York*, 974 F.2d 293, 297-98 (2d Cir. 1992). (Def. Reply at 5-6.)

application, to determine if they impacted his suitability for employment.

As discussed above, plaintiff has not raised even a minimal inference of discriminatory motive to support his discrimination claims. An essential element of a *Monell* claim is the underlying violation of a constitutional right. Thus, he cannot establish his *Monell* claim against the City of New York. *See Segal*, 459 F.3d at 219 ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct.") In any event, plaintiff's many allegations concerning the manner in which the City of New York administers its firefighter hiring process and monitors retention are (1) entirely conclusory; and (2) not supported by any facts that would make them plausible. Even if these allegations surrounding the manner in which the City of New York hires firefighters were not conclusory, plaintiff has not shown that such failures necessarily constitute a discriminatory policy.

Finally, plaintiff has failed to show a discriminatory practice "so persistent or widespread as to constitute a custom or usage with the force of law" sufficient to hold the City of New York liable for a violation of § 1983. Plaintiff makes repeated reference in the Amended Complaint to a class-action lawsuit, settlement, and monitoring arrangement concerning the

FDNY's hiring practices.  However, the Amended Complaint does not contain anything more than bare allegations that anyone other than he suffered from a refusal to hire in the manner in which he did.  The Second Circuit has made clear that "isolated acts . . . by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability."  *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012); *see also Henderson v. Town of Greenwich*, 317 F. App'x 46, 47 (2d Cir. 2009) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*." (quoting *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985))); *Giaccio v. City of New York*, 308 F. App'x 470, 472 (2d Cir. 2009) (affirming summary judgment in favor of defendants and dismissing *Monell* claim where plaintiff identified "at most, only four examples" of constitutional violations).  And because plaintiff has not alleged that any of the John Doe defendants is a final policymaker, their refusal to hire plaintiff, even if unlawful, would not support a *Monell* claim.  For these reasons, plaintiff's *Monell* claim must also fail.

## CONCLUSION

For the reasons set forth above, defendant City of New York's motion to dismiss for failure to state a claim is GRANTED.  The Clerk of Court is respectfully requested to enter

judgment in favor of defendants, to dismiss plaintiff's Amended

Complaint in its entirety, and to close the case.  Any notice of

appeal to the Second Circuit must be filed with the district

court Clerk within 30 days after the judgment is entered.

Fed. R. App. P. 4.

**SO ORDERED.**

Dated:   March 26, 2019
         Brooklyn, New York

                                    /s/
_____

**Kiyo A. Matsumoto**
United States District Judge